IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


SHERI BENHAM BOYER,

                    Plaintiff,

vs.                                   Case No. 15-1054-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

      This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

**I.  General legal standards**

      The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On August 15, 2013, administrative law judge (ALJ) Rhonda Greenberg issued her decision (R. at 20-30). Plaintiff alleges that she had been disabled since September 10, 2009 (R. at 20). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2016 (R. at

4

22).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 22).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 22).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 25).  After determining plaintiff's RFC (R. at 26), the ALJ found at step four that plaintiff could perform past relevant work as a director/manager of procurement R. at 29).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 30).

**III.  Did the ALJ err in her assessment of plaintiff's mental impairments?**

According to 20 C.F.R. § 404.1520a(c)(3,4), the Commissioner rates a claimant's mental limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  In the first three functional areas a five point-scale is used: none, mild, moderate, marked, and extreme. In the fourth functional area, a four-point scale is used: none, one or two, three, four or more.  If the degree of limitation in the first three categories is none or mild, and none in the fourth category, the Commissioner will generally conclude that the mental impairment is nonsevere.  20 C.F.R. § 404.1520a(d)(1).

The psychiatric review technique findings described in 20
C.F.R. § 404.1520a are not an RFC assessment but are used to
rate the severity of mental impairments at steps 2 and 3 of the
sequential evaluation process.  The mental RFC assessment used
at steps 4 and 5 of the sequential evaluation process requires a
more detailed assessment by itemizing various functions
contained in the broad categories set out in 20 C.F.R.
§ 404.1520a.  SSR 96-8p, 1996 WL 374184 at *4.  In assessing
RFC, the ALJ must consider limitations and restrictions imposed
by all of an individual's impairments, even those that are not
"severe."  While a "not severe" impairment standing alone may
not significantly limit an individual's ability to do basic work
activities, it may, when considered with limitations or
restrictions due to other impairments, be critical to the
outcome of a claim.  SSR 96-8p, 1996 WL 374184 at *5.

At step two, the ALJ found that plaintiff had no limitation
in activities of daily living, no limitation in social
functioning, no limitation in concentration, persistence, or
pace, and no episodes of decompensation (R. at 24-25).  The ALJ
therefore concluded that plaintiff's mental impairment was
nonsevere.  The ALJ further indicated that her findings at step
two are not a RFC assessment, but are used to rate the severity
of mental impairments at steps 2 and 3 of the sequential
evaluation process.  The ALJ then stated:

6

> Although the undersigned is obliged to
> consider all impairments, including those
> that are non-severe in determining residual
> functional capacity, no mental limitations
> are identified that affect her functioning
> in a job and none are reflected in her
> capacity assessment below as a result.

(R. at 25).  The ALJ then stated:

> In making this finding, the undersigned has
> given substantial weight to the opinion of
> State agency psychological consultants R.E.
> Schulman, Ph.D. and Sallye Wilkinson, Ph.D.,
> who opined the claimant's adjustment
> disorder with depressed mood is non-severe
> (Exhibits 2A; 3A).  The undersigned finds
> their opinions to be well-explained, well-
> supported by the claimant's treatment
> records and the objective findings from her
> consultative exam, and consistent with the
> record as a whole.

(R. at 25).  In the remainder of her decision, the ALJ never

again referenced plaintiff's mental impairments, and did not

include in her RFC findings any mental limitations.

A conclusion that the claimant's mental impairments are

non-severe at step two does not permit the ALJ simply to

disregard those impairments when assessing a claimant's RFC and

making conclusions at steps four and five.  In his RFC

assessment, the ALJ must consider the combined effect of all

medically determinable impairments, whether severe or not.  The

ALJ cannot rely on his step-two findings to conclude that the

claimant had no limitation based on her mental impairments.

Wells v. Colvin, 727 F.3d 1061, 1068-1069 (10th Cir. 2013).

In Wells, the court indicated that the language used by the ALJ suggested that the ALJ may have relied on his step-two findings to conclude that the claimant had no limitation based on her mental impairments, which would be inadequate under the regulations.  727 F.3d at 1069.  In the case before the court, the ALJ, at step two, found that plaintiff had no limitations in the areas of daily living, social functioning, and in concentration, persistence or pace, and no episodes of decompensation, and concluded that plaintiff's mental impairments are non-severe (R. at 24-25).  The ALJ then stated that she is obliged to consider all impairments, including those found not severe at step two in determining RFC, but found no mental limitations identified that affect her functioning in a job and none are reflected in her RFC (R. at 25).

In making the above findings, the ALJ gave substantial weight to the opinions of Dr. Schulman and Dr. Wilkinson.  The ALJ found that their opinions are well-explained, well-supported by the plaintiff's treatment records and the objective findings from her consultative exam, and consistent with the record as a whole (R. at 25).

However, the ALJ failed to mention that both Dr. Schulman and Dr. Wilkinson found that plaintiff had mild limitations in activities of daily living, mild limitations in social functioning, and mild limitations in maintaining concentration,

persistence or pace (R. at 79, 94).  Both consultants stated
that plaintiff may have some mild difficulties because of her
depression (R. at 80, 94).  As noted above, under the
regulations, if a person is found to have mild limitations in
the three categories, the agency can generally conclude that the
mental impairments are not severe.  However, mild limitations
are certainly greater than no limitations at all, as found by
the ALJ.

As noted in Wells, an ALJ could, of course, find at step
two that a medically determinable impairment posed no
restrictions on the claimant's work activities.  See 20 C.F.R.
§ 404.1520a(c)(4) (permitting ALJ to find that degree of
limitation in each of the four relevant functional areas is
"none").  However, in Wells, the ALJ found "mild" restrictions
in the first three functional areas.  727 F.3d at 1065 n.3,
1068.  In the case before the court, the ALJ found no
limitations in the first three functional areas, and no episodes
of decompensation.  Thus, as Wells indicates, the ALJ found that
plaintiff had no mental limitations, which would obviate any
need for further analysis at step four.  727 F.3d at 1065, n.3.

However, even though the ALJ gave "substantial weight" to
the two state agency consultants, the ALJ failed to mention that
both consultants found that plaintiff had mild, as compared to
no limitations, in the first three functional areas, and gave no

reason for rejecting their findings of mild limitations.   Only
in the area of decompensation did the ALJ and the consultants
agree that plaintiff had experienced no episodes of
decompensation (R. at 25, 79, 94).

In the case of Martinez v. Astrue, 422 Fed. Appx. 719, 724-
725 (10th Cir. Apr. 26, 2011), the court held that the ALJ erred
by failing to include all of the limitations found by Dr.
LaGrand without explaining why he rejected some of the
limitations, especially in light of the ALJ's conclusion that
the medical source's opinion was entitled to "great weight."
The ALJ simply ignored certain limitations contained in the
medical report.   The court held that the ALJ may have had
reasons for giving great weight to some of the limitations set
forth by the medical source, while rejecting other limitations.
However, before rejecting some of the limitations, the ALJ was
required to discuss why he did not include those limitations.
An ALJ must explain why he rejected some limitations contained
in a RFC assessment from a medical source while appearing to
adopt other limitations contained in the assessment.   Haga v.
Astrue, 482 F.3d 1205, 1207-1208 (10th Cir. 2007); Frantz v.
Astrue, 509 F.3d 1299, 1302-1303 (10th Cir. 2007); Wilson v.
Colvin, 541 Fed. Appx. 869, 872-874 (10th Cir. Oct. 16, 2013).

As the court in Wells indicated, a finding of no
limitations in each of the four functional areas, as found by

the ALJ in the case before the court, would demonstrate that the mental impairment posed no restriction on the claimant's work activities, and such a finding would obviate the need for further analysis at step four.  However, if the ALJ finds mild restrictions in the first three functional areas, further analysis is required at step four.

In this case, the two state agency consultants found that plaintiff had mild limitations in the first three functional areas.  Dr. DeGrandis, who performed a consultative exam on the plaintiff, found that plaintiff might experience some difficulties keeping an adequate pace in a full time work setting as a result of her symptoms of depression (R. at 531). The only other medical opinion, that of Dr. Hett, a treating physician, indicated that plaintiff required pain medications daily which can impair memory and judgment, and indicated that plaintiff's ability to respond appropriately to supervision, co-workers and work pressures would be affected because of her continuous use of medication (R. at 657-659).  Although the ALJ discounted the opinions of Dr. DeGrandis and Dr. Hett (R. at 23-24), the ALJ gave substantial weight to the opinions of the two state agency consultants, who found that plaintiff had mild limitations in the three broad functional areas.  Thus, the ALJ's finding of no limitations in the three broad functional

areas is contrary to all of the medical opinions regarding plaintiff's mental limitations.

The court finds that the ALJ erred by finding no limitations in the first three functional areas at step two despite giving "substantial weight" to the two state agency consultants who found that plaintiff had mild limitations in all three functional areas.  The ALJ failed to explain why he found no limitations despite giving substantial weight to the opinions of the two state agency consultants.  Furthermore, all of the medical opinion evidence indicates that plaintiff has a certain degree of mental impairments or limitations.  This is critical because, as stated in Wells, a finding of no limitations in the four functional areas obviates the need for further analysis of mental impairments at step four.  However, if mild restrictions are found in the first three functional areas, then at step four, those impairments, even if not severe, may, when considered with limitations or restrictions due to other impairments, impact a person's ability to do basic work activities and prevent a person from performing past work or narrow the range of other work that the individual may still be able to do.  SSR 96-8p, 1996 WL 374184 at *5.  In light of the facts of this case, the court cannot say that the ALJ's assessment, to the extent that she conducted an assessment of mental functions for purposes of step four, was harmless error.

There is evidence from the medical source opinions that would allow a reasonable factfinder to include mental limitations in plaintiff's RFC.[1] [2]  For these reasons, the court finds that this case should be remanded in order for the ALJ, after consideration of all the medical opinions noted above, to consider plaintiff's mental impairments, regardless of their severity, and make an RFC assessment that includes a narrative discussion regarding whether plaintiff's mental impairments warrant any limitations in the RFC findings for the plaintiff. See Wells, 727 F.3d at 1065, 1069; SSR 96-8p, 1996 WL 374184 at *7 (The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical factors and nonmedical evidence).

**IV.  Other issues raised by plaintiff**

---

[1] Courts should apply the harmless error analysis cautiously in the administrative review setting.  Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).  However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way.  Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

[2] This case is distinguishable from Alvey v. Colvin, 536 Fed. Appx. 792, 794-795 (10th Cir. Aug. 28, 2013) in which there are no records of mental health treatment, the medical opinions did not support any mental functional limitations, and even plaintiff's primary care physician opined that plaintiff had no significant mental issues.  The court, on those facts, concluded that the failure to conduct a more particularized assessment at step four was harmless error because there was no substantial evidence that would allow a reasonable administrative factfinder to include any mental limitations in claimant's RFC.  In the case of James v. Colvin, 2014 WL 1096386 at *3 (N.D. Okla. March 19, 2014), the court distinguished Alvey because in James, there was some support in the record for plaintiff's non-severe mental impairment in the form of mental treatment records.  Therefore, the court in James held that a remand was necessary so the ALJ can include plaintiff's mild mental impairment in the RFC assessment or explain why doing so is unnecessary.  In the case of Stookey v. Colvin, Case No. 13-2172-SAC, 2014 WL 3611666 at *4 (D. Kan. July 22, 2014), the court found that the ALJ failed to engage in an analysis of mental functions and how they may be impacted (or not) by claimant's medically determinable mental impairments.  The court stated that it cannot say that no reasonable factfinder would have resolved the factual matter differently in light of the treating physician's RFC form, the recent medical records showing repeated treatment for these conditions, and the increased dosages of medication prescribed.

Plaintiff also alleges a number of other errors, including the relative weight to be accorded to the various medical opinions and medical evidence, the use of the grids, credibility (including daily activities), and the adequacy of the step four findings.  These issues will not be addressed in detail because they will or may be affected by the ALJ's resolution of the case on remand after the ALJ makes proper findings at step four regarding the impact, if any, of plaintiff's mental impairments on her ability to work.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

Plaintiff contends error by the ALJ in her assessment of the opinions of Dr. DeGrandis and Dr. Hett, and in her assessment of the medical evidence.  The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding,

the court cannot displace the agency's choice between two fairly
conflicting views, even though the court may have justifiably
made a different choice had the matter been before it de novo.
Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).
With the exception of the error previously set forth in this
opinion, the court finds no other clear error by the ALJ in her
consideration of the medical opinions or the medical evidence.
However, on remand, the medical opinions, in conjunction with
the opinions of the two state agency consultants, should be
considered when determining plaintiff's mental limitations, if
any, when making her RFC findings.

When evaluating plaintiff's allegations of drowsiness and
lack of focus due to pain medication, the ALJ noted that
plaintiff could still watch television eight hours a day, read
daily, manage finances and go to the gym three times a week.
The ALJ also noted other daily activities in the home which she
believed failed to demonstrate that the medication caused
drowsiness or lack of focus (R. at 28).  First, according to the
regulations, activities such as taking care of yourself,
household tasks, hobbies, therapy, school attendance, club
activities or social programs are generally not considered to
constitute substantial gainful activity.  20 C.F.R. §
404.1572(c) (2013 at 399).  Furthermore, although the nature of
daily activities is one of many factors to be considered by the

15

ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.**  As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  In other words, evidence of performing general housework does not preclude a finding of disability.  In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes,

did light cooking, read, watched TV, visited
with his mother, and drove to shop for
groceries.  We noted that these were
activities that were not substantial
evidence of the ability to do full-time,
competitive work. In <u>Baumgarten v. Chater</u>,
75 F.3d 366, 369 (8th Cir.1996), the ALJ
pointed to the claimant's daily activities,
which included making her bed, preparing
food, performing light housekeeping, grocery
shopping, and visiting friends.  We found
this to be an unpersuasive reason to deny
benefits: **"We have repeatedly held...that
'the ability to do activities such as light
housework and visiting with friends provides
little or no support for the finding that a
claimant can perform full-time competitive
work.'"** Id. (quoting <u>Hogg v. Shalala</u>, 45
F.3d 276, 278 (8th Cir.1995)). Moreover, we
have reminded the Commissioner

> **that to find a claimant has the
> residual functional capacity to
> perform a certain type of work,
> the claimant must have the ability
> to perform the requisite acts day
> in and day out, in the sometimes
> competitive and stressful
> conditions in which real people
> work in the real world...The
> ability to do light housework with
> assistance, attend church, or
> visit with friends on the phone
> does not qualify as the ability to
> do substantial gainful activity.**

<u>Thomas v. Sullivan</u>, 876 F.2d 666, 669 (8th
Cir.1989) (citations omitted).

<u>Draper</u>, 425 F.3d at 1131 (emphasis added).

In <u>Hughes v. Astrue</u>, 705 F.3d 276 (7th Cir. 2013), the court
stated:

> [The ALJ] attached great weight to the
> applicant's ability to do laundry, take

> public transportation, and shop for
> groceries. We have remarked the naiveté of
> the Social Security Administration's
> administrative law judges in equating
> household chores to employment. "The
> critical differences between activities of
> daily living and activities in a full-time
> job are that a person has more flexibility
> in scheduling the former than the latter,
> can get help from other persons (... [her]
> husband and other family members), and is
> not held to a minimum standard of
> performance, as she would be by an employer.
> The failure to recognize these differences
> is a recurrent, and deplorable, feature of
> opinions by administrative law judges in
> social security disability cases [citations
> omitted]."

705 F.3d at 278.

On remand, the ALJ should consider plaintiff's activities in light of the case law set forth above in order to determine if she is capable of engaging in substantial gainful activity. The activities described by the ALJ do not establish that plaintiff can work at a competitive level over an 8 hour day. As for watching television, that is hardly inconsistent with allegations of pain and related limitations. See Krauser, 638 F.3d at 1333. Furthermore, the ALJ must take into consideration the opinion of Dr. Hett, her treating physician, that her pain medications impair her memory and judgement and her ability to interact appropriately with others (R. at 658).[3]

---

[3] The ALJ noted in her decision that Dr. Hett failed to indicate to what degree her medications would impact her (R. at 24). On remand, it would be advisable for the ALJ or plaintiff's counsel to obtain from Dr. Hett the degree her abilities would be impacted by her medication.

Finally, the court will set out the requirements for findings at step four.  At step four, the ALJ is required by Social Security Ruling (SSR) 82-62 to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity. Henrie v. United States Dep't of HHS, 13 F.3d 359, 361 (1993). Thus, at the third or final phase of the analysis, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.  At each of these three phases, the ALJ must make specific findings.  Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).[4]  An ALJ can comply with these

---

[4] In Winfrey, the court noted that the Secretary glossed over the absence of the required ALJ findings by relying on the testimony of the vocational expert (VE) that plaintiff could meet the mental demands of his past relevant work, given his mental limitations as found by the ALJ.  The court stated that this practice of delegating to a VE many of the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged. The court went on to say as follows:

> Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review.  When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review...a VE may supply information to the ALJ at step four about the demands of the claimant's past relevant work...[but] the VE's role in supplying vocational information at step four is much more limited than his role at step five...Therefore, while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work.

Winfrey, 92 F.3d at 1025.

requirements if he quotes the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis.  Doyal v. Barnhart, 331 F.3d 758, 760-761 (10th Cir. 2003).[5]

To make the necessary findings at step two, the ALJ must obtain adequate factual information about those work demands which have a bearing on the medically established limitations. Winfrey, 92 F.3d at 1024.  When the ALJ fails to make findings at phase two of step four regarding the physical and/or mental demands of plaintiff's past work, the case will be remanded for a proper step four analysis.  Bowman v. Astrue, 511 F.3d 1270, 1271-1273 (10th Cir. 2008); Frantz v. Astrue, 509 F.3d at 1303-1304; Kilpatrick v. Astrue, 559 F. Supp.2d 1177, 1182-1185 (D. Kan. 2008)(Belot, D.J.).  However, when the ALJ makes proper findings at step five, any error at step four will be deemed harmless error.  Martinez v. Astrue, 316 Fed. Appx. 819, 824

---

[5] The ALJ's findings in Doyal were as follows:

> The vocational expert testified that the claimant's past relevant work as a housecleaner and sewing machine operator would be classified as light and unskilled, and her past relevant work as an activities director would be classified as light and semiskilled.... The vocational expert indicated that the claimant's past relevant work as a housecleaner and sewing machine operator did not require lifting more than 20 pounds, walking for prolonged periods, or performing tasks requiring bilateral normal grip strength.

Doyal, 331 F.3d at 760.  The ALJ found that plaintiff could perform past relevant work as a housecleaner and a sewing machine operator.  331 F.3d at 761.  As noted above, the ALJ cited with approval the testimony of the vocational expert concerning the physical demands of the 2 past jobs which the ALJ found that the claimant could still perform.

(10th Cir. Mar. 19, 2009); see <u>Murrell v. Shalala</u>, 43 F.3d 1388, 1389-1390 (10th Cir. 1994).

Finally, plaintiff argues that she is disabled based on the grid.  However, this issue will not be addressed because of the errors noted above that need to be addressed when this case is remanded before it can be conclusively determined whether or not plaintiff can perform her past relevant work.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 23rd day of March 2016, Topeka, Kansas.


s/SAM A. CROW
Sam A. Crow, U.S. District Senior Judge